**Karen BALL and Tracy Christopher, on behalf of themselves individually, and on behalf of all other women similarly situated, Plaintiffs,**

v.

**SFX BROADCASTING, INC.; Liberty Broadcasting, Inc.; Michael Ferrel; and Robert Ausfeld, Individually as Aiders and Abettors, and in their Representative Capacities, Defendants.**

No. 00–CV–1090.

United States District Court, N.D. New York.

Aug. 21, 2001.

Cusick, Hacker & Murphy, Latham, NY (John E. Higgins, of counsel), for plaintiffs Karen Ball and Tracy Christopher.

Winston & Strawn, New York City (Eric M. Robinson, Michael T. Rasnick, of counsel), for defendants SFX Broadcasting, Inc., Liberty Broadcasting, Inc., Michael Ferrel, and Robert Ausfeld.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

On July 13, 2000, plaintiffs Karen Ball ("Ball") and Tracy Christopher ("Christopher") (collectively, "plaintiffs") commenced the instant action against defendants SFX Broadcasting, Inc. ("SFX"), Liberty Broadcasting, Inc. ("Liberty"), Michael Ferrel ("Ferrel"), and Robert Ausfeld ("Ausfeld") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and state law.

Defendants now move to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) or (6). Plaintiffs oppose. Oral argument was heard on April 26, 2001, in Albany, New York. Decision was reserved.

### II. FACTS

This action arises from the alleged discrimination against plaintiffs by defendants on the basis of plaintiffs' gender and pregnancy. The following are the facts in this case stated in the light most favorable to the nonmoving plaintiffs.

Plaintiffs were both employees of WGNA, a radio station owned by Liberty, in Albany, New York. In July 1996, after they had been employed at WGNA for some time, Liberty was purchased by SFX. Ferrel was the president of SFX. Ausfeld was the general manager of several Albany area stations for Liberty, and was hired by SFX as vice-president and

general manager of those Albany area stations.

Upon SFX's assumption of control of stations previously owned by Liberty, Ausfeld instructed all employees of those stations—including employees of WGNA—to sign an employment agreement as a condition of continued employment by SFX. On July 17, 1996, Ausfeld told station employees that if they wanted to retain their jobs, they had to fill out an employment application and acknowledge receipt of an employee manual, returning both by July 19, 1996. Both plaintiffs signed a form acknowledging receipt and acceptance of the employment agreement which contained an arbitration clause (the "arbitration agreement").[1]

1. Because the scope and terms of the arbitration clause are central to the instant motion, the clause is reprinted in its entirety below:

 *Arbitration of Post–Employment Disputes.*

 Any dispute or claim, whether based on contract, tort, or otherwise, relating to or arising out of any termination or any alleged discrimination or retaliation in your employment shall be subject to final and binding arbitration. The arbitration shall proceed in accordance with the Model Employment Arbitration Rules of the American Arbitration Association ("AAA") in effect at the time the claim or dispute arose, unless other rules are agreed upon by the parties. The arbitration shall be held in the city where the Company last employed the employee if the AAA maintains an office in that city. In the event that the AAA does not maintain an office in that city, the arbitration shall be held in the nearest city where the AAA maintains an office. The arbitration shall be conducted by one arbitrator who is a member of the AAA. The parties mutually may agree to select an arbitrator from outside the arbitration's immediate geographic area and the parties mutually may agree to share the costs of an arbitrator's travel to the parties' city and related costs in the event that the AAA does not maintain an office in the city where the Company last employed the employee.

 The arbitrator shall have jurisdiction to determine any claim, including the arbitrability of any claim, submitted to him or her. The arbitrator may grant any relief authorized by law for any properly established claim. However, the arbitrator shall neither disregard nor refuse to enforce Company policy, nor shall the arbitrator order or require the Company to adopt a policy which the Company previously has not adopted. Each party will bear her, his, or its own arbitration expenses.

 This arbitration procedure constitutes the exclusive means of resolving disputes relating to or arising out of the termination of the employee's employment or which allege discrimination or retaliation. Notwithstanding any rule of the AAA to the contrary, the parties will be entitled to conduct discovery (i.e., investigation of facts through depositions or other means) which shall be governed by the Federal Rules of Civil Procedure ("Rule" or "Rules") then in effect. However, the parties need not comply with obviously inapplicable Rules, e.g., Rule 16, or, in the interests of time, with Rule 26(a) as amended in 1993. Similarly, the Rules' stated response time for all written discovery or motions shall be reduced by one-half and the parties shall complete all discovery within 100 days from the date the claimant filed her, his, or its initial arbitration demand. The arbitrator shall have all power and authority to order discovery, make and enter orders with regard to motions, and to enter a final and binding judgment. The arbitrator's final judgment shall be enforced by any court of competent jurisdiction. Such judgment may be reviewed by an otherwise competent court only on the grounds of bias, improper conduct of the arbitrator, abuse of discretion, or violation of public policy.

 If the Company hired you after June 30, 1996, the Company offers this policy in consideration of your employment with the Company. If the Company enters a Local Marketing Agreement ("LMA") or similar agreement after June 30, 1996, or acquires a station which formerly employed you and the Company continues your employment, the Company offers this policy in consideration of your continued employment with the Company. In any other circumstance, the Company offers you this policy in consideration of your continued employment and the Company's provision of an additional 2 paid holidays to you in 1996. (Christopher Aff., Exh. A. at 10–11.)

The Acknowledgment which plaintiffs signed provided, in part, as follows:

> I understand and agree that any dispute connected with my employment which arises after my employment's conclusion and between the Company and me, including but not limited to termination, discharge, discrimination, or retaliation shall be resolved by submission to final and binding arbitration as set forth in more detail in the Employee Manual.

(Christopher Aff., Exh. A at 28.)

Subsequently, plaintiff Ball became pregnant, and took pregnancy-related leave under WGNA's leave program. She alleges that she was discriminated against as a result of her utilization of pregnancy leave. She filed a claim with the EEOC, alleging that her employment was terminated by Ausfeld on the pretext that she was no longer needed, but that, in fact, her job duties were assigned to a nonpregnant female who lacked Ball's qualifications.

The parties unsuccessfully attempted to negotiate a resolution of Ball's claims. When these efforts failed, SFX served a demand for arbitration upon her counsel on January 10, 1997. Ball responded by commencing a state court action asserting state law claims against SFX and Ausfeld. She also obtained an order to show cause on January 29, 1997, in state court and sought a permanent stay of arbitration.

On March 18, 1997, the state trial court denied Ball's motion to stay arbitration. The court concluded (1) that the arbitration agreement was governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"); and (2) that a valid agreement to arbitrate exists between the parties.[2] Ball appealed the trial court's decision to the Appellate Division, Third Department. In an opinion dated December 4, 1997, the Third Department affirmed the trial court's decision on state law grounds. *In re Ball and SFX Broadcasting, Inc.*, 236 A.D.2d 158, 160, 665 N.Y.S.2d 444 (3d Dep't 1997). Ball then attempted an appeal to the New York Court of Appeals, which declined to hear the merits of her appeal on June 16, 1998. *In re Ball and SFX Broadcasting, Inc.*, 92 N.Y.2d 803, 677 N.Y.S.2d 73, 699 N.E.2d 433 (1998) (table).

Ball's claim was arbitrated on December 7, 1999. In an apparent effort to preserve the right to object to the arbitration, neither Ball nor her counsel attended the arbitration hearing. SFX and Ausfeld put on witnesses and introduced documentary evidence in support of their case. All parties were offered the opportunity to submit post-hearing briefs, and both SFX and Ausfeld did so. On March 7, 2000, the arbitrator rendered a decision in favor of SFX and Ausfeld.[3]

Like Ball, Christopher claims that she was discriminated against by defendants

---

**2.** The court noted that "Plaintiff has signed the Acknowledgment and Receipt Form which expressly and unambiguously obliges Plaintiff to comply with the SFX Employment Arbitration Policy" and that "Plaintiff had seven days to read the Manual and sign the Form." *Ball v. SFX Broadcasting, Inc.*, No. 554–97 slip op. at 3–4 (N.Y.Sup.Ct. March 18, 1997) (Rasnick Aff.Exh. H).

**3.** Pursuant to the rules of the AAA, Ball was billed $2,600 as her portion of the fees— including the arbitrator's fees—for the arbitration. (Higgins Aff.Ex. M.) It is noted that this amount apparently reflects only the costs of hearings at which Ball and her counsel were present. Had she been billed for the cost of the hearing at which only SFX and Ausfeld introduced evidence and argument, the portion attributed to her would undoubtedly have been much higher. However, it is also noted that it appears as though all the costs of the arbitration were ultimately assessed against SFX. (*See* Rasnick Aff.Exh. VV) (assessing arbitrator's fees of $4,000 against SFX).

on the basis of sex and pregnancy, and that she was retaliated against for her complaints of discrimination.[4] Like Ball, Christopher also filed a charge of discrimination with the EEOC. However, unlike Ball, plaintiff Christopher has never litigated the validity of the arbitration agreement in any forum. In the instant motion, defendants seek to dismiss her complaint and to compel arbitration of her claims.[5]

## III. *STANDARD OF REVIEW*

### A. *12(b)(1) Motion to Dismiss*

If challenged, a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists. *See Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir.1996). When a defendant moves to dismiss a cause of action pursuant to Fed.R.Civ.P. 12(b)(1), "the movant is deemed to be challenging the factual basis for the court's subject matter jurisdiction." *Cedars–Sinai Medical Center v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993). For purposes of such a motion, "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." *Id.* "All other facts underlying the controverted jurisdictional allegations are in dispute and are subject to fact-finding by the district court." *Id.* at 1584. On such a motion, both the movant and the pleader are permitted to "use affidavits and other pleading materials to support and oppose such motions." *Kamen v.*

*American Telephone and Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986).

### B. *12(b)(6) Motion to Dismiss*

In deciding a Rule 12(b)(6) motion, a court "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint 'unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). However, conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y. 1990); *Albert v. Carovano*, 851 F.2d 561, 572 (2d Cir.1988).

### C. *Federal Arbitration Act*

Under Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 9, an arbitration award must be confirmed in the absence of any of the grounds for vacating or modifying an award under Sections 10 or 11. Under Section 10, an award may only be vacated if (1) the award was procured by corruption, fraud, or un-

---

**4.** Specifically, Christopher claims that she was harassed and discriminated against because of her sex and pregnancy; that her pay was cut as a result of her use of pregnancy leave; that she was constructively discharged by defendants' harassment and discrimination as a result of gender and pregnancy, and also in retaliation for her complaints of discrimination; and that defendants refused to remedy the discriminatory conduct of which she complained. Like Ball, she also claims to be suing on behalf of all similarly-situated female

employees of defendants, who were required to agree to mandatory arbitration of employment disputes as a condition of continued employment with SFX. (Christopher Aff. ¶¶ 2–4.)

**5.** As an alternative to dismissal of Christopher's complaint, defendants request that her complaint be stayed pending the outcome of arbitration.

due means; (2) there was evident partiality or corruption in the arbitrator; the arbitrator was guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or any other misbehavior by which the rights of any party have been prejudiced; or (3) the arbitrator exceeded his powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter was not made. 9 U.S.C. § 10(a). In addition to these statutory grounds, an award may be vacated where the arbitrators manifestly disregarded the law or the evidence. *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir.1998), *cert. denied,* 526 U.S. 1034, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999).

## IV. *DISCUSSION*

Because there are differing issues relating to each of the plaintiffs, the viability of each plaintiff's claims are discussed separately below.

### A. *Claims of Karen Ball*

■ Plaintiff Ball faces an insurmountable hurdle to the viability of her claims. She has unsuccessfully litigated all of the issues present in this case in state court, and is bound by the decisions rendered against her by those courts, as well as by the arbitrator. *See Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 267 (2d Cir. 1997) (explaining that under New York law as it has evolved, "res judicata and collateral estoppel apply to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award") (citation and internal quotation marks omitted). Because she has previously litigated the very issues raised in this case, and received adverse decisions in every

proceeding, defendants' motion must be granted as to Ball and her complaint must be dismissed.

In an effort to avoid this result, Ball makes several arguments in opposition to the instant motion. *First,* she argues that the arbitration agreement was invalid because she was coerced and defrauded into signing it, and because the arbitration agreement was both unconscionable and a contract of adhesion. *Second,* she argues that the arbitration award against her should not be confirmed because employment disputes are exempt from coverage under the FAA. *Third,* she argues that because the arbitration agreement does not apply to her claims against Ausfeld, the award in his favor should not be confirmed. *Fourth,* she argues that the arbitration award cannot be confirmed insofar as it resolved her complaints concerning the defendants' conduct following her termination. *Finally,* Ball argues that the arbitrator's decision is not entitled to estoppel effects because the instant complaint raises issues which were not decided by the arbitrator, and also because she did not have a full and fair opportunity to litigate her claims in arbitration. Each of these objections is discussed in turn.

As to Ball's first objections, these arguments are duplicative of those she made in prior proceedings. Accordingly, because prior courts have ruled against her as to the validity of the arbitration agreement, her objections are misplaced.

As to her second objection, her argument concerning the applicability of the FAA is irrelevant because the arbitration in this case was ordered pursuant to state law. *See In re Ball and SFX Broadcasting, Inc.*, 236 A.D.2d at 160–61, 665 N.Y.S.2d 444. In any event, the recent decision of the Supreme Court in *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001), has

rendered this argument moot. As discussed below, the Court held in *Circuit City* that the FAA does apply to contracts of employment, excepting only those contracts involving transportation workers.

As to her third objection, the language of the arbitration agreement does not limit its application only to claims against SFX, but instead broadly states that "[t]his arbitration procedure constitutes the exclusive means of resolving disputes relating to or arising out of the termination of the employee's employment or which allege discrimination or retaliation." Under New York law, similarly broad arbitration agreements have been held to apply to discrimination claims against supervisors. *See Shapiro v. Prudential Securities, Inc.,* 233 A.D.2d 384, 386, 650 N.Y.S.2d 12 (2d Dep't 1996). *See also Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration International, Inc.,* 198 F.3d 88, 98 (2d Cir.1999) (holding that claims against nonsignatories to arbitration agreement are subject to arbitration when such claims are "factually intertwined" with the arbitrable dispute). In any event, both the state courts and the arbitrators found her claims against Ausfeld to be arbitrable, and Ball is now bound by these determinations.

With regard to Ball's fourth objection, she claims that the arbitrator lacked authority to decide her claims of discrimination based on the refusal of SFX to hire her for a vacant receptionist position because she was not employed by SFX at that time, and therefore, there was no agreement between the parties as to this conduct. Again, this issue was resolved against her by both the state courts and the arbitrator, and will not be revisited here.

■ Finally, Ball argues that the instant complaint raises issues not addressed in arbitration. She asserts that two of her causes of action allege theories of discrimination not previously alleged; specifically, that the practice of requiring employees to agree to mandatory arbitration constituted a pattern or practice of discrimination and had a disparate impact upon pregnant female employees. This argument is rejected.

■ It is clear that these claims relate to the very facts and allegations of discrimination which were before the state courts and the arbitrator. Even assuming the validity of such claims, they clearly are so factually intertwined with the claims which were before the arbitrator that res judicata would apply to bar relitigation here. *See Pennsylvania Engineering Corp. v. Islip Resource Recovery Agency,* 710 F.Supp. 456, 462 (E.D.N.Y.1989) ("The principle of res judicata bars the relitigation of any ground of recovery that was available in the prior action, whether or not it was actually litigated. Collateral estoppel precludes relitigation of issues actually litigated and necessarily determined in a prior lawsuit. Both doctrines apply to arbitration awards.") (citing, *inter alia, Benjamin v. Traffic Exec. Assn. Eastern Railroads,* 869 F.2d 107 (2d Cir.1989)).[6]

---

**6.** As noted above, the arbitration agreement applied to "[a]ny dispute or claim, whether based on contract, tort, or otherwise, relating to or arising out of any termination or any alleged discrimination or retaliation in your employment." The agreement also provided that "[t]he arbitrator shall have jurisdiction to determine any claim, including the arbitrability of any claim, submitted to him or her.

The arbitrator may grant any relief authorized by law for any properly established claim." Ball has not advanced any credible basis for concluding either that these two claims were outside the scope of the arbitration clause or that the arbitrator lacked authority to award appropriate relief for the alleged discrimination. Accordingly, she has failed to identify

Moreover, her arguments based on the absence of full and fair opportunity to litigate her claims in arbitration are rejected because any lack of an opportunity to litigate her claims in arbitration was due to her own decision to absent herself from the arbitration proceedings.

 In sum, the validity of the agreement to arbitrate between Ball and SFX has conclusively been decided against her by the state courts and by the arbitrator in ordering her to submit her discrimination and retaliation claims to arbitration. Her arguments in opposition to confirmation of the arbitration award are, therefore, rejected. Ball's complaint must be dismissed, and defendants' motion to confirm the arbitration award must be granted.[7]

### B. *Claims of Tracy Christopher*

Unlike Ball, plaintiff Christopher has never litigated the validity of the arbitration agreement at issue in this case, and accordingly, her arguments are relevant to the issue of whether or not her federal discrimination claims must be submitted to arbitration under the employment agreement. For the reasons set forth below, defendants' motion to dismiss the complaint and to compel arbitration is denied as to Christopher.

The Supreme Court has recently answered the question of whether or not an employee's Title VII claims are subject to arbitration pursuant to the FAA in the affirmative. *Circuit City*, 121 S.Ct. at 1311. Though this case settled the debate over whether or not the FAA applies to contracts of employment, excluding contracts of employment for transportation workers, the Court's decision left open an important issue to be decided in the instant case.

 After *Circuit City*, it is still true that an employee cannot be required by an arbitration clause to forfeit any "substantive rights" as a condition of employment. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). The question, therefore, remains what, if any, minimal fairness requirements must be met in order for a court to conclude that an employee is not being compelled to forfeit such rights in agreeing to the mandatory arbitration of employment disputes involving claims under federal law. As courts and commentators have struggled with this question, one of the central fairness issues has been the propriety of requiring employees to pay a portion of the arbitrator's fees.

The D.C. Circuit was the first Court of Appeals to squarely confront this issue. In the seminal case of *Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir.1997), the court observed that it was "unaware of any situation in American jurisprudence in which a beneficiary of a federal statute has been required to pay for the services of the judge assigned to hear his or her case," then concluded that "it would undermine Congress's intent to prevent employees who are seeking to vin-

---

any reason why she should not be estopped from litigating such claims.

7. Because the arbitration in this case was ordered pursuant to state law, *see In re Ball and SFX Broadcasting, Inc.*, 236 A.D.2d at 160–61, 665 N.Y.S.2d 444, there must be an independent basis to exercise jurisdiction over defendant's motion to confirm the arbitration award. *See Greenberg v. Bear, Stearns & Co.*, 220 F.3d 22, 26 (2d Cir.2000). In this case, Ball's commencement of the instant action pursuant to Title VII provides a basis for the exercise of supplemental jurisdiction under 28 U.S.C. § 1367. *See Rocket Jewelry Box, Inc. v. Noble Gift Packaging, Inc.*, 986 F.Supp. 231, 237 (S.D.N.Y.1997), *aff'd in relevant part*, 157 F.3d 174 (2d Cir.1998).

dicate statutory rights from gaining access to a judicial forum and then require them to pay for the services of an arbitrator when they would never be required to pay for a judge in court." *Id.* at 1484. The D.C. Circuit reasoned that since arbitration would occur "only because it has been mandated by the employer as a condition of employment," the employer should be required to bear the additional expense of its chosen forum. *Id.* at 1484–85.[8]

Similarly, in *Shankle v. B–G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230 (10th Cir.1999), the court observed that while arbitration can offer an adequate forum for the resolution of statutory claims, "[t]his supposition falls apart [ ] if the terms of an arbitration agreement actually prevent an individual from effectively vindicating his or her statutory rights." *Id.* at 1234. Noting that an average arbitration would cost an employee between $1,875 and $5,000, the court concluded that such a large sum would be prohibitive to many employees and that "[t]he Agreement thus placed [the employee] between the proverbial rock and a hard place—it prohibited the use of the judicial forum, where a litigant is not required to pay for a judge's services, and the prohibitive cost substantially limited use of the arbitral forum." *Id.* at 1235 (citing *Cole,* 105 F.3d at 1484). Therefore, the court concluded that the arbitration agreement at issue did not provide an effective mechanism for the vindication of statutory rights and was unenforceable under the FAA.

Other cases do hold that the imposition of a fee-splitting arrangement can prevent an employee's vindication of statutory rights, but focus on whether or not the expense is prohibitive to the actual employee at issue, rather than imposing a per se rule of invalidity. *See, e.g., Bradford v. Rockwell Semiconductor Systems, Inc.,* 238 F.3d 549, 556 (4th Cir.2001) (citing *Green Tree Financial Corp.–Alabama v. Randolph,* 531 U.S. 79, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)).[9]

However, it is not at all clear that the *Green Tree* decision supports the conclusion that a per se rule is inappropriate, and that a court is required to consider the particular financial position of the plaintiff in evaluating the burden imposed by an arbitration agreement. In *Green Tree,* the Court noted that "we believe that where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the *likelihood* of incurring such costs." *Id.* at 92. (Emphasis added.) The Court concluded that the plaintiff had failed to meet her burden because "the record reveals only the arbitration agreement's silence on the subject, and that fact alone is plainly insufficient to render it unenforceable." *Id.*

▮▮▮▮ This analysis, which focuses on the likelihood of substantial arbitration costs, is readily distinguishable from the analysis adopted by courts such as the Fourth Circuit focusing on the financial

---

**8.** However, in *LaPrade v. Kidder, Peabody & Co., Inc.,* 246 F.3d 702, 704 (D.C.Cir.2001), the D.C. Circuit explained that *Cole* only prohibited the assessment of "arbitration-related costs that are analogous to a judge's salary or expenses in a traditional judicial forum." The D.C. Circuit has also recently held that its holding in *Cole* does not apply to non-statutory claims. *See Brown v. Wheat First Securi-*

*ties, Inc.,* 257 F.3d 821 (D.C.Cir.2001) (holding that *Cole* does not extend to non-statutory state law claims).

**9.** Within the Second Circuit, district courts that have considered this issue have not resolved it with uniformity. *See Rajjak v. McFrank and Williams,* 2001 WL 799766, *3–*4 (S.D.N.Y., July 13, 2001) (collecting cases).

situation of the particular plaintiff. As such, it is held that it is sufficient for an employee seeking to avoid arbitration to show a likelihood that he or she will be responsible for significant arbitrators' fees, or other costs which would not be incurred in a judicial forum. Such a showing is sufficient to demonstrate that the challenged arbitration agreement does not provide an effective mechanism for the vindication of statutory rights. Christopher has shown a likelihood that she will be responsible for significant arbitration costs, which she would not incur in a judicial forum, and the arbitration agreement is, therefore, unenforceable.

In any event, regardless of whether or not a per se rule is adopted in this case, Christopher has made a showing that she cannot afford to pay the fees imposed under the arbitration agreement. Christopher has submitted an affidavit in support of her opposition detailing the various costs which she can reasonably be expected to incur if she is compelled to submit her claims to arbitration. These include a $1,000 per day arbitrator's fee (Christopher Aff. ¶ 16), a $500 counterclaim fee (*Id.* ¶ 21), $150 per day hearing fees (*id.*), and $150 per day postponement fees (*id.*). Christopher asserts that her financial situation does not permit her to pay these fees, as she is newly employed on a commission basis and is the sole financial support for herself and her four children. (*Id.* ¶ 23.) [10]

In light of the fact that the imposition of such costs upon an employee seeking to

vindicate his or her statutory rights has no parallel in the litigation arena, and also because Christopher has demonstrated that the imposition of such fees upon her as a condition of vindicating her statutory rights, it simply cannot be said that, under such circumstances, arbitration is "a reasonable substitute for a judicial forum." *Id.* at 1484. Accordingly, it is held that Christopher cannot be compelled to arbitrate her statutory claims.

## V. *CONCLUSION*

After careful consideration of the objections and submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that

Defendants' motion is GRANTED in part and DENIED in part as set forth below:

1. Defendants' motion as to the claims of plaintiff Karen Ball is GRANTED;

 a. The complaint of plaintiff Karen Ball is DISMISSED;

 b. The arbitration decision issued by Arbitrator Mark Brossman on March 7, 2000, is CONFIRMED;

2. Defendants' motion as to the claims of plaintiff Tracy Christopher is DENIED; and

3. Defendants shall file and serve an answer to the complaint of plaintiff Tra-

---

**10.** Defendants argue that Christopher's arguments concerning the cost of the arbitration are not properly before this court. They assert that "the AAA is the place for Ms. Christopher to make her costs argument. The AAA's National Rules for the Resolution of Employment Disputes provide that 'the AAA may, in the event of extreme hardship on any party, defer or reduce the administrative

fees[.]' " (Def. Reply Mem. at 9.) This argument is rejected. The mere fact that Christopher might possibly obtain some relief from the significant fees described above does not prohibit the conclusion that she has shown the "likelihood" of incurring such fees, as required by the Supreme Court's *Green Tree* decision.

cy Christopher on or before September 14, 2001.

IT IS SO ORDERED.