# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3243

_____

| | | |
|---|---|---|
| Marken Gannon, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | |
| v. | * | |
| | * | Appeal from the United States |
| Circuit City Stores, Inc., | * | District Court for the |
| | * | Eastern District of Missouri. |
| Defendant - Appellant. | * | |
| ------------------------------------ | * | |
| Equal Employment Opportunity | * | |
| Commission, | * | |
| | * | |
| Amicus on Behalf of Appellee. | * | |

_____

Submitted: April 13, 2001
Filed: August 17, 2001

_____

Before BOWMAN and FAGG, Circuit Judges, and VIETOR,[1] District Judge.

_____

BOWMAN, Circuit Judge.

This appeal presents the issue of whether a written agreement between an employee and employer to settle all employment-related disputes exclusively through

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

binding arbitration remains enforceable after a provision within the agreement is found invalid. The District Court concluded that the inclusion of the invalid provision rendered the entire arbitration agreement unenforceable. We reverse.

I.

In May 1998, Marken Gannon applied for employment with Circuit City Stores, Inc., in Ellisville, Missouri. As a prerequisite to her employment, Circuit City presented Gannon with its Dispute Resolution Agreement for her to sign. The agreement provided that Gannon agreed to settle all employment-related claims against Circuit City exclusively through binding arbitration. The agreement advised her to familiarize herself with the rules and procedures under the agreement prior to signing. Terms in bold type informed Gannon that the agreement affected her legal rights and that she might want to seek legal advice before signing. It also stated that she could withdraw her consent up to three days after signing the agreement and specified how she could effectuate a withdrawal. Gannon signed the agreement and Circuit City hired her.

After approximately one year of employment, Circuit City terminated Gannon. Following her discharge, Gannon filed charges with the Equal Employment Opportunity Commission and the Missouri Commission on Human Rights alleging that during her employment with Circuit City she had encountered sexual harassment, a hostile work environment, sex discrimination, and retaliation. Upon receiving her right-to-sue letters from both agencies, she brought suit in federal court. Circuit City responded by filing a motion to dismiss the case and to compel arbitration based on the arbitration agreement Gannon had signed. The District Court declined to compel arbitration. It determined that the entire agreement was unenforceable because it contained an invalid

clause that limited punitive damages.[2] Circuit City filed a motion for reconsideration, arguing that it no longer enforced the punitive damages clause and that another provision in the agreement served to automatically strike terms judicially determined to be unenforceable. The District Court denied the motion and Circuit City appeals.[3] On appeal, Circuit City does not challenge the ruling that the punitive-damages clause is unenforceable, but argues that the clause should be severed and Gannon should be compelled to arbitrate her claims under the remaining terms of the agreement.

## II.

Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (1994), "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The FAA declares that written agreements to resolve disputes through arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (1994). The effect of the FAA was to "create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). In Circuit City Stores, Inc. v. Adams, 121 S. Ct. 1302 (2001), the Supreme Court held that the FAA's provisions apply to arbitration agreements covering employment-related claims. Id. at 1311 (holding that in the employment context "only contracts of employment of transportation workers" are exempted from the FAA's coverage). The FAA therefore governs Gannon's arbitration agreement with Circuit City and we undertake our review keeping in mind that the FAA evinces a "liberal

---

[2]The clause found invalid by the District Court limited punitive damages to five thousand dollars.

[3]The Federal Arbitration Act explicitly provides us with jurisdiction to hear such interlocutory appeals. 9 U.S.C. § 16 (1994).

federal policy favoring arbitration agreements." <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24.

Our role in determining whether a court should compel arbitration is limited. We must determine simply whether the parties have entered a valid agreement to arbitrate and, if so, whether the existing dispute falls under the coverage of the agreement. <u>Larry's United Super, Inc., v. Werries</u>, 253 F.3d 1083, 1085 (8th Cir. 2001); <u>Keymer v. Mgmt. Recruiters Int'l, Inc.</u>, 169 F.3d 501, 504 (8th Cir. 1999). Once we conclude that the parties have reached such an agreement, the FAA compels judicial enforcement of the arbitration agreement.

We review the District Court's interpretation of the arbitration agreement de novo, <u>Lyster v. Ryan's Family Steak Houses, Inc.</u>, 239 F.3d 943, 945 (8th Cir. 2001), and we look to Missouri contract law to interpret the validity of the agreement. <u>Id.</u> at 946.

### III.

The parties agree that they entered into an agreement to settle disputes through binding arbitration and that their agreement covers the present dispute. They contest, however, the validity of the agreement following the District Court's conclusion that one provision within the agreement was invalid. Circuit City contends that, under the terms of the arbitration agreement and Missouri contract law, the invalid clause should be struck and Gannon should be compelled to arbitrate her claims in accordance with the remaining terms of the agreement. Gannon argues that the invalid provision renders the entire agreement unenforceable as a matter of public policy.

### A.

"The primary rule in the interpretation of a contract [under Missouri law] is to ascertain the intention of the parties and to give effect to that intention." Speedie Food Mart, Inc. v. Taylor, 809 S.W.2d 126, 129 (Mo. Ct. App. 1991). When the contract is unambiguous, the intent of the parties should be determined from the instrument alone. Marshall v. Pyramid Dev. Corp., 855 S.W. 2d 403, 406 (Mo. Ct. App. 1993). Rule 18 of the Circuit City arbitration agreement specifically states the intent of the parties in the event a provision within the agreement is found invalid. It provides that, "[i]n the event that any of these Dispute Resolution Rules and Procedures agreed upon by the Parties is held to be in conflict with a mandatory provision of applicable law, the conflicting Rule or Procedure shall be modified automatically to comply." It also states that "[i]n the event of an automatic modification with respect to a particular Rule or Procedure, the remainder of these Rules and Procedures shall not be affected." The terms of Rule 18 express an unambiguous intent by the parties to sever any terms determined to be invalid and to allow all claims to proceed to arbitration under the remaining provisions of the agreement.

Even if the parties had not recorded their intentions in the severability provision, Missouri contract law declares severance to be proper in this instance. "With respect to contracts which contain a forbidden or invalid provision, our Supreme Court at an early date declared 'the general rule to be, that if the good be mixed with the bad, it shall nevertheless stand, provided a separation can be made.'" Kisling v. MFA Mut. Ins. Co., 399 S.W.2d 245, 250 (Mo. Ct. App. 1966) (quoting Koontz v. Hannibal Sav. & Ins. Co., 42 Mo. 126, 129 (1868)). The essence of the contract between Circuit City and Gannon is an agreement to settle their employment disputes through binding arbitration. The punitive-damages clause represents only one aspect of their agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes. "[W]here one provision in a contract, which does not constitute its main or essential feature or purpose, is void . . . but is clearly separable and severable from the other parts which are relied upon, such other parts are not affected by the invalid

provision, and may be enforced as if no such provision had been incorporated in the contract." Shibi v. Miller, 268 S.W. 434, 436 (Mo. Ct. App. 1925).

B.

Gannon argues that public-policy concerns override these contractual rules and require that we hold the entire arbitration agreement unenforceable.[4]   Although Missouri common law ordinarily allows the severance of invalid terms, Gannon relies on a narrow exception that prohibits severance "where there is some 'all-pervading vice, such as fraud, or some unlawful act which is condemned by public policy or the common law and avoids all parts of the transaction because all are alike infected.'" Id. (quoting Koontz, 42 Mo. at 129).  She asserts that allowing severance of an invalid provision within an arbitration agreement falls within this exception.  According to Gannon, employers will be emboldened to include improper terms because employees will be forced either to arbitrate under the unfair terms or to go to court to get them removed from the agreement.  Gannon claims that because severance provides employers with such an improper incentive, we must therefore hold the entire agreement unenforceable to discourage such behavior.

We disagree.  The inclusion of the damages-limitation clause does not infect the agreement with any type of defect that requires us to invalidate the entire contract.  We recognize that in certain situations one party may include so many invalid provisions that the validity of the entire agreement would be undermined.  For example, in Hooters of America, Inc. v. Phillips, an entire arbitration agreement was found unenforceable because Hooters promulgated "so many biased rules" that it created "a sham system unworthy even of the name of arbitration."  173 F.3d 933, 940 (4th Cir. 1999). Circuit City's agreement does not, however, present such a case.  Although Circuit City has not

---

[4]The Equal Employment Opportunity Commission, as amicus curiae, joins Gannon in this argument.

appealed the decision of the District Court that invalidated the punitive-damages provision,[5] this Court had no controlling precedent at the time the contract was executed, nor does it today, which states that such a limitation is necessarily invalid.[6] Likewise, Missouri courts have not suggested that it is improper for parties to include such terms in their contracts. In these circumstances, the inclusion of the damages clause does not meet the public-policy exception prohibiting severance under Missouri contract law. See Kisling, 399 S.W.2d at 251 (rejecting public-policy argument where party failed to provide supporting legal authority); White v. McCoy Land Co., 87 S.W.2d 672, 685 (Mo. Ct. App. 1935) (embracing the proposition that only the state constitution, laws, or judicial decisions represent proper evidence of public policy).

With regard to Gannon's more general public-policy arguments, we note that the FAA limits our review of an arbitration agreement to determining whether a dispute is properly arbitrable, and our authority does not extend to the consideration of public-policy advantages or disadvantages resulting from the enforcement of the agreement. See Werries, 253 F.3d at 1086. This is particularly true where controlling federal public policy has already been firmly established. The Supreme Court has recognized that "'[t]he preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered,' a concern which 'requires that we rigorously enforce agreements to arbitrate.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625-26 (1985) (quoting Dean Witter Reynolds

---

[5]Circuit City has provided affidavit testimony that it has amended the rules and procedures of its arbitration agreements with its employees to exclude the provision limiting damages on front pay, back pay, and punitive damages and now authorizes arbitrators to award whatever relief would be available in court under the law. It therefore has no desire to appeal regarding the provision's validity.

[6]In fact, we recently held in Larry's United Super, Inc., v. Werries, that the question of whether a waiver of RICO punitive damages in an arbitration agreement was valid remained a matter for arbitrators, not the courts, to decide in the first instance. See 253 F.3d 1083, 1086 (8th Cir. 2001).

Inc. v. Byrd, 470 U.S. 213, 221 (1985)).  The boundaries of private arbitration agreements in the employment context are currently being set, with the Supreme Court only recently affirming that the FAA extends to arbitration agreements covering employment disputes.  See Circuit City Stores, Inc., 121 S. Ct. at 1311.  In an evolving climate such as this, if we were to hold entire arbitration agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA and severely chill parties from structuring their contracts in the most efficient manner for fear that minor terms eventually could be used to undermine the validity of the entire contract.  Such an outcome would represent the antithesis of the "liberal federal policy favoring arbitration agreements."  Moses H. Cone Mem'l Hosp., 460 U.S. at 24; see also Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.").  Accordingly, we reject Gannon's public-policy arguments.[7]

By signing the arbitration contract, Gannon demonstrated her intent to resolve any employment disputes with Circuit City through binding arbitration.  See Mitsubishi Motors Corp., 473 U.S. at 626 ("Thus, as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.").  We do not believe that the severance of the provision limiting punitive damages

---

[7]We also disagree with Gannon's assertion that severance encourages employers to include improper terms in arbitration agreements.  The parties' dispute over the enforceability of the arbitration agreement has caused many months of time-consuming and expensive litigation for both sides.  The Supreme Court has long recognized that "by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.'"  Gilmer, 500 U.S. at 31 (quoting Mitsubishi, 473 U.S. at 628).  Circuit City has now lost many of the advantages of arbitration because of the present dispute.  We believe that these forfeitures belie the argument that severance encourages employers to insert problematic terms that likely will result in litigation.

diminishes her contractual intent to arbitrate because excluding the provision only allows her the opportunity to arbitrate her claims under more favorable terms than those to which she agreed.[8]

IV.

Severing the punitive-damages clause is consistent with the terms of the contract, the intent of the parties, Missouri contract law, and the FAA's policy favoring the enforcement of arbitration agreements. We therefore reverse the judgment of the District Court and remand the case for further proceedings consistent with this opinion.[9]

_____

[8]We recognize that the Eleventh Circuit has found public-policy arguments similar to those advanced by Gannon persuasive in holding that an arbitration agreement in the employment context is unenforceable because it included an invalid provision. See Perez v. Globe Airport Sec. Serv., Inc, 253 F.3d 1280, 1286-87 (11th Cir. 2001). To the extent that the court relied on these public-policy arguments for its holding we would disagree with the decision in Perez. We note that the arbitration agreement in Perez did not have a severability clause and that the case is distinguishable from the present case on that ground. See Perez, 253 F.3d at 1286 ("The Globe arbitration agreement does not contain a severability provision, and this court has previously rejected the contention that the policy favoring arbitration agreements requires that courts sever unlawful provisions, rather than void the agreement.").

[9]Because the District Court concluded that the punitive-damages limitation was a sufficient ground for invalidating the entire arbitration agreement, it did not consider Gannon's argument that fee-sharing provisions in the agreement were also invalid. On remand, Gannon may renew her arguments concerning the fee-sharing provisions. If she does so, the District Court should consider her arguments in light of the Supreme Court's recent decision in Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 92 (2000) (holding that "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs."). Under the terms of the arbitration agreement, which carefully limit the amount of fees that Gannon can incur, we think it doubtful that Gannon can succeed in an attack on the fee-sharing provisions.

VIETOR, Senior District Judge, dissenting.

I respectfully dissent.

I believe public policy was violated by Circuit City when it placed in the arbitration agreement the extreme limitation on punitive damages.[10]  The limit takes away all but $5,000 of the $300,000 maximum recovery available under Title VII.  The Missouri Human Rights Act contains no limit on punitive damages.  Circuit City's counsel conceded at oral argument that job applicants are not told that the punitive damages limitation is far less than the amount recoverable under the law.

The near-eradication of substantive recovery rights enacted by Congress and the Missouri legislature is, in my judgment, unconscionable.  I think the Eleventh Circuit got it right in Perez v. Globe Airport Security Services, Inc., 253 F.3d 1280 (11th Cir. 2001), a decision with which the majority, in footnote 8, disagrees.  The Perez court stated:  "An arbitration agreement containing provisions that defeat a federal statute's remedial purpose is . . . not enforceable."  Id. at 1287.  An attempt by the employer to defeat the remedial purpose of Title VII taints the entire agreement, making it unenforceable.  Id.  For reasons expressed by the appellee in this case and by the Eleventh Circuit in Perez at 1287, severance of the offending provision and enforcement of the remainder of the agreement is not an appropriate resolution.

Moreover, were those provisions held invalid, in all likelihood they would be severable.  But those questions are not before us, and we do not decide them in the present appeal.

[10]The agreement to arbitrate was crafted by Circuit City, not by *the parties*.  Ms. Gannon played no part in drafting the agreement.  It was presented to her on a take-it-or-leave-it basis as a condition of gaining employment with Circuit City.  She either signed or she did not get the job.  Circuit City's job application form provided to Ms. Gannon clearly states: "Circuit City will not consider your application unless [the Dispute Resolution Agreement] is signed."

The majority expresses concern that "if we were to hold entire arbitration agreements unenforceable every time a particular term is held invalid, it would discourage parties from forming contracts under the FAA and severely chill parties from structuring their contracts in the most efficient manner for fear that minor terms eventually could be used to undermine the validity of the entire contract." I do not think so. An affirmance in this case would not send a message that entire arbitration agreements would be unenforceable "every time a particular term is held invalid" and would not engender a fear that "minor terms eventually could be used to undermine the validity of the entire contract." This case does not involve a procedural provision or a minor term of any sort. It involves a term that guts a major substantive remedy that Congress and the Missouri legislature chose to provide to employees. It is a term that seeks to drastically change the substantive law (in favor of the employer) that is to be applied in the arbitration process. That definitely is not minor.

I would affirm.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.