Maryann SPINETTI, Plaintiff,

v.

SERVICE CORPORATION INTERNATIONAL and Service Corporation International of Pennsylvania d/b/a Lafayatte Memorial Park, Defendants.

No. CIV.A.01–1191.

United States District Court, W.D. Pennsylvania.

Nov. 15, 2001.

OGG Cordes Murphy & Ignelzi, Attn. Samuel Cordes Esq., Pittsburgh, PA, for Plaintiff.

Littler Mendelson, Attn. Richard Antonelli Esq., Pittsburgh, PA, for Defendants.

**OPINION** and **ORDER OF COURT**

AMBROSE, District Judge.

### SYNOPSIS

Following her termination from employment. Plaintiff commenced suit against her former employers, arguing that she was fired because of age and gender discrimination. Accordingly, she asserted claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., and under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(a). The Employer believes that Spinetti is contractually obligated to resolve these claims through an arbitration process, and has filed a Motion to Dismiss and Compel Arbitration (Docket No. 4). Spinetti argues that the arbitration agreement is unenforceable. I agree that the agreement to arbitrate is unenforceable insofar as it subjects Spinetti to paying half of the costs of arbitration and to paying her own attorney's fees and costs, regardless of whether she ultimately prevails. The Motion to Dismiss and Compel Arbitration is granted, subject to the severing of these two provisions.

### OPINION

Plaintiff Mary Ann Spinetti ("Spinetti") worked for more than ten years as an employee of Service Corporation international and Service Corporation International of Pennsylvania d/b/a Lafayatte Memorial Park ("Lafayatte"). On October 24, 2000, however, her employment ended. Lafayatte claims to have fired Spinetti because she assaulted another employee. Spinetti denies the allegation. Believing the alleged assault to be mere pretext for age and gender discrimination, Spinetti filed suit. She asserts claims under ADEA and Title VII.

Whether or not discrimination played a role in her termination is of no concern at

this juncture. Instead, I must consider the matter of arbitration. While employed, Spinetti executed a "Principles of Employment Agreement" (the "Agreement"). The Agreement contains a clause stating that "employment-related disputes will be resolved by arbitration."*See* Docket No. 8, Ex. 2. It further provides that "[e]ach party may retain legal counsel and shall pay its own costs and attorneys' fees, regardless of outcome of the arbitration," and that "[e]ach party shall pay one-half of the compensation to be paid to the arbitrator(s), as well as one-half of any other costs relating to the administration of the arbitration proceeding (e.g., room rental, court reporter, etc.)." *Id.*

Lafayatte maintains that, under these terms of the Agreement, Spinetti is obligated to arbitrate her discrimination claims. Spinetti counters that the Agreement is unenforceable both because the cost of arbitrating her claims would be so expensive as to prohibit her from effectively asserting her rights, and because the Agreement deprives her of her statutory right to recover attorney's fees and costs should she prevail. I agree with both of Spinetti's contentions. Lafayatte's Motion to Dismiss or Compel Arbitration is granted, subject to the severing of these two provisions.

## STANDARD OF REVIEW [1]

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A fact is material when it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rule 56 mandates the entry of judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In considering a motion for summary judgment, the Court must examine the facts in the light most favorable to the party opposing the motion. *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946, 949 (3d Cir.1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

---

1. Although both parties describe the pending Motion as one to "Dismiss," they each submit extraneous documents for the Court's consideration. Because I consider these submissions in resolving the matter at hand, the pending Motion is more appropriately characterized as one for "summary judgment."

## ANALYSIS

### I. *Payment of One–Half of Costs and Fees Associated With Arbitration*

As stated above, the Agreement obligates Spinetti to pay one-half of the costs associated with arbitration. The discrete issue before me is whether such an agreement is unenforceable. Neither the United States Supreme Court nor the Third Circuit Court of Appeals have resolved this matter and, in past years, other federal courts have reached different conclusions. *See Shankle v. B–G Maintenance Mgmt. of Colorado*, 163 F.3d 1230 (10th Cir.1999); *Paladino v. Avnet Computer Technologies, Inc.*, 134 F.3d 1054 (11th Cir.1998) and *Cole v. Burns Intern. Security Services*, 105 F.3d 1465 (D.C.Cir.1997) (all finding such clauses to be unenforceable), as compared to: *Koveleskie v. SBC Capital Markets, Inc.*, 167 F.3d 361 (7th Cir.1999), *cert denied*, 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999), *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith*, 170 F.3d 1 (1st Cir.1999), and *Arakawa v. Japan Network Group*, 56 F.Supp.2d 349 (S.D.N.Y.1999) (all finding such clauses to be enforceable).

Yet the Supreme Court's recent decision on a closely-related issue provides much guidance and clarification. In *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79, 82, 121 S.Ct. 513, 517, 148 L.Ed.2d 373 (2000), the Court addressed, in part, "whether an arbitration agreement that does not mention arbitration costs and fees is unenforceable because it fails to affirmatively protect a party from potentially steep arbitration costs." Although the Court answered the question in the negative, it declined to adopt a *per se* rule. Rather, it acknowledged that, "[i]t may well be that the existence of large arbitration costs could preclude a litigant such as Randolph from effectively vindicating her federal statutory rights in the arbitral forum." *Green Tree*, 531 U.S. at 90, 121 S.Ct. at 522. Because the record did not contain any evidence of large arbitration costs, however, the Court found the risk that the plaintiff would be saddled with prohibitive costs to be "too speculative to justify the invalidation of an arbitration agreement." *Id.*, at 91, 121 S.Ct. at 522.[2]

Though the arbitration clause at hand is not "silent" as to who bears the costs associated with arbitration, the *Green Tree* decision is still instructive. First, the *Green Tree* decision suggests that a court adopt a case-by-case approach to assessing the enforceability of arbitration clauses. *See Bradford v. Rockwell Semiconductor Systems, Inc.*, 238 F.3d 549, 556 (4th Cir. 2001); *Perez v. Globe Airport Security Services, Inc.*, 253 F.3d 1280, 1284–85 (11th Cir.2001); *Giordano v. Pep Boys— Manny, Moe & Jack, Inc.*, Civ. No. 99–1281, 2001 WL 484360 at *5–6 (E.D.Pa. March 29, 2001); *Goodman v. ESPE America, Inc.*, Civ. No. 00–862, 2001 WL 64749 (E.D.Pa. Jan. 19, 2001) and *Boyd v. Town of Hayneville, Al.*, 144 F.Supp.2d 1272, 1278 (M.D.Ala.2001). Thus, a court must look to the particular language pertaining to the payment of fees and costs (if such language exists), as well to the actual

---

**2.** I read the *Green Tree* decision as implicitly granting a district court the authority to engage in a preliminary inquiry regarding the alleged prohibitive costs associated with arbitration, prior to compelling arbitration. I recognize that neither the Supreme Court nor the Third Circuit Court have explicitly decided as such, but to read *Green Tree* any other way would be to deprive a claimant of the ability to enforce a claim where the costs are actually prohibitive. Simply stated, a district court cannot correct the imposition of costs on an appeal from arbitration, where the costs associated with arbitration were so prohibitive as to dissuade the claimant from asserting her federal statutory rights. I note that Lafayatte does not argue that this Court lacks the authority to consider the matter of costs prior to arbitration.

costs and to the claimant's financial situation.[3]

Second, the *Green Tree* decision makes clear who bears the burden of proof regarding the issue of costs—the party objecting to the payment of costs as prohibitive. *Green Tree*, 531 U.S. at 92, 121 S.Ct. at 522 (stating that, "where ... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs.") *Id.*, at 92, 121 S.Ct. at 522.[4] *See also Roberson v. Clear Channel Broadcasting, Inc.*, 144 F.Supp.2d 1371, 1373 (S.D.Fla.2001); *Phillips v. Associates Home Equity Services, Inc.*, 179 F.Supp.2d 840, 846–47 (N.D.Ill.2001); and *Camacho v. Holiday Homes, Inc.*, 167 F.Supp.2d 892, 895 (W.D.Va.2001) (all citing to *Green Tree* for the proposition that the party seeking to avoid arbitration bears the burden of proving excessive costs).

Guided by *Green Tree* and its progeny, then, I turn to the evidence proffered by Spinetti in support of her contention that the arbitration process would be prohibitively expensive. In filing with the American Arbitration Association ("AAA"),[5] Spinetti must pay an initial, non-refundable, filing fee of $500.00. *See* Docket No. 8, Ex. 6, p. 16. Spinetti is also responsible for paying an additional filing fee of $2,750.00.[6] There is also a case filing fee of $1,000. *Id.* According to AAA rules, these fees are to be paid by the filing party—Spinetti—unless the agreement provides otherwise. Here, the Agreement does not speak specifically to the payment of filing fees. It does state that the parties will split one-half of the costs relating to the administration of the arbitration proceeding, but then identifies items such as room rental and court reporters as examples of such costs. Even were I to read the fee splitting clause so broadly as to include the filing fees, it is clear that Spinetti would have to pay al-

3. Admittedly, this case-by-case analysis may seem contrary to the arbitration process's ability to minimize costs and streamline litigation. Nevertheless, any employer seeking to compel arbitration could eliminate this preliminary inquiry simply by including in the arbitration agreements a clause specifying that the employer would pay all costs.

4. I note that, in *Ball v. SFX Broadcasting, Inc.*, 165 F.Supp.2d 230 (N.D.N.Y.2001), the district court read the *Green Tree* decision as limiting its focus to the "costs" of arbitration. It contrasted the *Green Tree* court's decision with that of previous case law, which it read as focusing on the "costs" to the particular plaintiff—that is, the plaintiff's financial situation. *See Ball*, at 239–40. I do not read the *Green Tree* decision in such a limited fashion. Although the Court spoke only of "arbitration costs," the pivotal question was whether the plaintiff could effectively vindicate her statutory rights. This question necessarily contemplates consideration of the plaintiff's ability to pay the arbitration costs. For instance, even if the arbitration costs were high, an independently wealthy plaintiff could afford

to pay them, and thus his/her ability to effectively vindicate federal rights would not be compromised. Under the *Ball* court's reading of *Green Tree*, the arbitration provision nevertheless would be unenforceable because the arbitration costs would be too high. I think the more likely scenario is that the *Green Tree* decision's lack of reference to the plaintiff's ability to pay stemmed from the plaintiff's failure to meet her burden of proof as to costs.

5. Though the Agreement does not specifically state that the AAA will conduct the arbitration, it does provide that the employment arbitration rules of the AAA will govern. Both parties appear to adopt the position that the AAA will conduct the arbitration and I rely on their representations in this regard.

6. This fee is based upon her claim—which is estimated to be in the range of $150,000 to $300,000. The range is based upon her salary of $65,000 prior to her termination. *See* Docket No. 7, p. 11 and Docket No. 8, Ex. 6, p. 18.

most $2,000 simply to file her claim. This far exceeds the cost of filing a claim in federal court.

In addition to the filing fees, Spinetti would be responsible for paying a $150.00 charge for each day of the hearing, and half the cost of an arbitrator. A mid-range arbitrator in Western Pennsylvania charges approximately $250.00 per hour, with a $2,000 per day minimum. *Id.*, Ex. 5. Thus, for even a one-day hearing (which nobody maintains would be sufficient), Spinetti would have to pay an additional $1,150.00. Further, these figures do not even begin to include associated costs such as room rentals and court reporting fees.

A $3,000 combined cost may seem insignificant, as Lafayatte suggests, in light of Spinetti's previous annual salary of $65,000. Yet, Spinetti was terminated from her employment, and no longer commands a $65,000 a year salary. In fact, she spent the first six months following termination unemployed. *See* Spinetti Affidavit, ¶ 6. Only in May, 2001, was Spinetti able to secure employment. Even so, she received only $1,075.00 per month—or less than $300.00 per week. *Id.*, ¶ 7. Beginning in September of 2001, Spinetti accepted another job which paid $250.00 per week for four weeks and then became straight commission. *Id.* The $250.00 to $300.00 per week salary is insufficient to meet Spinetti's expenses. She testified, by way of affidavit, that her monthly expenses for food and rent total approximately $2,000. *Id.*, ¶ 10. To cover the deficit between salary and expenses, Spinetti has taken cash advances from her credit cards. *Id,* ¶ 9.

It hardly seems likely that a person in Spinetti's position, living off credit card advances, could afford to pay the costs associated with arbitration. Unlike the claimants in *Zumpano v. Omnipoint Communications*, Civ. No. 00–595, 2001 WL 43781 (E.D.Pa. Jan. 18, 2001) and *Goodman v. ESPE America, Inc.*, Civ. No. 00–862, 2001 WL 64749 (E.D.Pa. Jan. 19, 2001), Spinetti was not an executive, commanding a six-figure salary, stock options and/or severance. Rather, I find Spinetti's position to be more akin to the claimants' In *Ball v. SFX Broadcasting, Inc.*, 165 F.Supp.2d 230, 240 (N.D.N.Y.2001) (finding that plaintiff had proven she could not pay arbitration fees where she would be charged a $1,000 per day arbitrator's fee, a $500 counterclaim fee and a $150 a day hearing fee, in light of the fact that she was newly employed on a commission basis and was the sole financial support for herself and children); *Phillips v. Associates Home Equity*, 179 F.Supp.2d 840, 845–47 (N.D.Ill.2001) (holding that plaintiff had met her burden of "showing that the expense of arbitration would be prohibitive" where she would be forced to pay upwards of $4,000 to file her claim); *Camacho v. Holiday Homes. Inc.*, 167 F.Supp.2d 892 (W.D.Va.2001) (finding that plaintiff satisfied her burden of proof under *Green Tree* where she made approximately $300 per week, provided sole support for herself and three children, had $14,125 debt in student loans and paid several hundred dollars a month in living expenses and where the costs of arbitration would range between $1,200 and $8,000); and *Giordano v. Pep Boys—Manny, Moe & Jack*, Civ. No. 99–1281, 2001 WL 484360 (E.D.Pa. March 29, 2001) (declaring an arbitration agreement unenforceable where plaintiff made $400 per week and faced arbitration costs which would likely consist of a $2,000 filing fee and a daily arbitrator fee of between $600 and $900).[7] In sum, I find

---

**7.** I find unpersuasive Lafayatte's reliance upon the decision rendered in *Cline v. H.E. Butt Grocery Co.*, 79 F.Supp.2d 730, 733 (S.D.Tex.1999) for the proposition that an employee making at least $35,000 a year is capable of paying half of the arbitration fees. A close reading of *Cline* reveals that the claimant had offered no information about his fi-

that Spinetti has adequately demonstrated that the costs associated with arbitrating her claims are prohibitive.

## II. Recovery of Attorney's Fees

■ Spinetti attacks the enforceability of the Agreement on another basis as well—the award of attorney's fees and costs. Title VII and the ADEA permit a district court to award attorney's fees and costs to a prevailing party. *See* 42 U.S.C. § 2000e–5(k) and 29 U.S.C. §§ 626(b), 216(b). I agree with Spinetti that the Agreement truncates these statutorily granted rights.

Indeed, the Agreement specifically provides that "[e]ach party may retain legal counsel and shall pay its own costs and attorney's fees, regardless of the outcome of the arbitration." *See* Docket No. 8, Ex. 2, ¶ 4. Lafayatte insists that this provision is not at odds with the dictates of Title VII and the ADEA because the Agreement also calls for the application of Pennsylvania and federal laws—presumably, Title VII and the ADEA. Under Lafayatte's proposed interpretation of the contract, I would simply ignore the provision regarding attorney's fees and costs.[8]

Yet Lafayatte's reading of the Agreement ignores very clear language set forth elsewhere, stating that "[i]n the event of any inconsistency between this Agreement and the statutes, rules or regulations to be applied pursuant to this paragraph, the terms of this Agreement shall apply." *Id.*, Ex. 3, ¶ 4. While certainly mindful of those principles of contract interpretation which encourage a court to adopt a reading of a contract which renders it legal and enforceable, I cannot square Lafayatte's proposed construction with the clear language of ¶ 4. Simply stated, ¶ 4 is contrary to the ADEA and Title VII. In finding this provision to be unenforceable, I rely upon the Supreme Court's admonition in *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), that "[b]y agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."

## III. Severability of the Objectionable Provisions

■ Having determined that two components of the Agreement are unenforce-

---

nancial status or ability to pay. *Cline*, 79 F.Supp.2d at 733. Absent such information, the court was reluctant to find, based upon salary alone, an inability to pay. I would agree with the *Cline* court that, had Spinetti failed to tender any information about her financial status, or inability to pay, I would decline to hold that an individual making $65,000 per year would be unable to pay arbitration costs. Yet Spinetti did tender such information and has proven an inability to pay. Thus, the *Cline* decision is distinguishable.

8. I note that, perhaps recognizing the strained interpretation it suggests, Lafayatte states that it "will not assert that the Principles of Employment preclude the award of a reasonable attorney fee to Plaintiff if she prevails in arbitration under the same standards

set forth in Title VII and the ADEA." *See* Docket No. 5, p. 13. Spinetti urges this Court to reject Lafayatte's offer, suggesting that it constitutes a unilateral modification of the contract. *See* Docket No. 7, p. 15 n. 10. I disagree. The case upon which Spinetti relies in support of this assertion, *Perez*, 253 F.3d at 1284, involved a defendant's offer to forego the AAA arbitration mandated by the contract, in favor of a less expensive, private mediation, as a means of defraying plaintiff's costs. Clearly, the defendant in *Perez* sought to change the terms of the contract, perhaps in a manner which would not be as favorable to the claimant. Here, Lafayatte does not propose an arbitration method or forum not contracted for, rather, it simply agrees to eliminate the cost should Spinetti prevail. The proposed change would, undoubtedly, inure to Spinetti's benefit.

able, I must decide whether to simply sever those provisions and compel arbitration, or to declare the entire Agreement invalid and let Spinetti pursue her claims in federal court. Lafayatte urges that the less drastic course of action is to sever the objectionable provisions, and to compel arbitration. Certainly, other courts have either adopted this tact, or expressed a willingness to adopt it. *See Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 680–81 (8th Cir.2001) and *Giordano v. Pep Boys—Manny, Moe & Jack, Inc.,* Civ. No. 99–1281, 2001 WL 484360 at *6 (E.D.Pa. March 29, 2001); *Zumpano v. Omnipoint Communications,* Civ. No. 00–595, 2001 WL 43781 at *12 (E.D.Pa. Jan. 18, 2001) (stating, in *dicta,* that the court would nullify any offensive portion of the arbitration agreement and compel arbitration); *Quinn v. EMC Corp.,* 109 F.Supp.2d 681, 685–86 (S.D.Tex.2000) (also, in *dicta*). These positions are in line with the strong federal policy favoring enforcement of arbitration agreements.

Yet, as Spinetti points out, those courts which have severed objectionable provisions generally relied upon a specific clause in the arbitration agreement allowing for severability. *See Giordano,* 2001 WL 484360 at *6 (noting that the agreement contained an explicit clause providing for severability) and *Gannon,* 262 F.3d 677, 682–83 n. 8 (noting the presence of a severability clause). In *Perez v. Globe Airport Security Services, Inc.,* 253 F.3d 1280, 1286 (11th Cir.2001), the Eleventh Circuit court expressly noted that the arbitration agreement did not contain a severability provision and reaffirmed its position that "the policy favoring arbitration agreements [does not] require[ ] that courts sever unlawful positions, rather than void the agreement."

While both parties' positions have some merit, I think the better course of action is to nullify the objectionable parts of the Agreement and compel arbitration. As recognized by the Eighth Circuit court in *Gannon,* here "[t]he essence of the contract between [the parties] is an agreement to settle their employment disputes through binding arbitration." *Gannon,* 262 F.3d at 681. The provisions regarding payment of arbitration costs and attorney's fees represent only a part "of their agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes." *Id.* By nullifying both objectionable portions of the Agreement, I do not disturb the parties' overriding intent to arbitrate. Indeed, I simply make something to which Spinetti previously agreed, more favorable to her.

## ORDER OF COURT

And Now, this **15th** day of November, 2001, after careful consideration, and for the reasons set forth in the accompanying Opinion, the Defendants' Motion to Dismiss and Compel Arbitration (Docket No. 4) is GRANTED.

It is further ORDERED that the parties proceed with arbitration, as required by the Principles of Employment Agreement, except that the provisions set forth in the Agreement requiring Spinetti to bear one-half the costs of the arbitration is stricken, as is the provision requiring Spinetti to bear her own attorney's fees and costs should she ultimately prevail under either Title VII or the ADEA. The Clerk is directed to mark this case "CLOSED" forthwith.