# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2323

_____

| | | |
|---|---|---|
| Bob Schultz Motors, Inc., a Missouri corporation, | * * * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Kawasaki Motors Corporation, U.S.A., a Delaware corporation, | * * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  December 11, 2002

Filed:  July 1, 2003

_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and RILEY, Circuit Judges.

_____

BOWMAN, Circuit Judge.

This dispute between a motorcycle dealer, Bob Schultz Motors (Schultz), and its distributor, Kawasaki, was submitted to arbitration pursuant to the "Dealer Sales and Service Agreement" that governed the parties' relationship.  The arbitrator ruled in favor of Kawasaki on all counts.  However, following a hearing on costs and attorney fees allowed under the arbitration provision, the arbitrator ruled that the last sentence in the arbitration provision, which awarded costs and fees to the prevailing party, was unconscionable, was a contract of adhesion, and was therefore

unenforceable. The District Court[1] confirmed the arbitrator's ruling in its entirety and Kawasaki appealed. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(d) (2000) and affirm.

## I.

This decade-long dispute involves an attempt by Bob Schultz Motors and its owner, William Wefel, to acquire a third Kawasaki motorcycle dealership in the St. Louis region. Schultz brought suit in Missouri state court and alleged, inter alia, that Kawasaki wrongfully refused to consent to its purchase of West County Kawasaki from John and Betty Catanzaro in 1992. Kawasaki removed the action to federal court based on diversity jurisdiction and moved to have the suit dismissed or, in the alternative, to have the matter referred to arbitration pursuant to 9 U.S.C. § 4. Kawasaki based this motion on the parties' "Dealer Sales and Service Agreement," ¶32 of which provided:

> 32. DISPUTE RESOLUTION.
> All controversies, claims and disputes arising in connection with this Agreement, except any controversies, claims and disputes relating to amounts due and unpaid to DISTRIBUTOR [Kawasaki], relating to DISTRIBUTOR'S rights to retake possession of any Product or relating to third party personal injury, shall be settled by mutual consultation between the parties in good faith as promptly as possible, but failing an amicable settlement shall be settled finally by arbitration in accordance with the provisions of this Section 32. Such arbitration shall be conducted in Los Angeles, California, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and the parties hereto agree that such arbitration shall be the sole and exclusive method of resolving any and all such controversies, claims or disputes, except those expressly excluded above. Judgement upon such

---

[1] The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

award may be entered in the Superior Court of the State of California for the County of Orange, if the award is rendered against DISTRIBUTOR, or in any court which has jurisdiction over DEALER [Schultz], if the award is rendered against DEALER. The prevailing party shall be entitled to recover from the nonprevailing party all costs and expenses of the arbitration, including without limitation, attorneys' fees.

The District Court dismissed two counts of Schultz's complaint and issued an order compelling arbitration on the remaining counts. Importantly, the District Court also rejected Schultz's claim that the distribution agreement was a contract of adhesion, violated public policy, and was unconscionable. The District Court concluded that "no legal constraints exist which foreclose arbitration of the disputes" and "Schultz Motors has failed to show that Kawasaki's arbitration clause is unconscionable or inherently unfair." Memorandum and Order at 13, 8 (March 30, 1994). The District Court did not make a finding as to Schultz's claim of economic duress, which was later dropped, but did note that "[i]f this issue were a matter for the Court's determination, the Court would conclude Schultz Motors has failed to show it entered into the franchise agreements under economic duress of the kind which requires a court to intervene." Id. at 8.

Thereafter, in 1995, as arbitration was about to commence, Schultz added counts to its arbitration complaint that alleged Kawasaki wrongfully refused to allow Schultz to relocate one or both of its existing dealerships to within a few blocks of a another recently-established Kawasaki dealership. In 2000, the arbitrator issued a "Ruling on Liability Issues" that found in favor of Kawasaki on all counts and ruled that, pursuant to the parties' arbitration agreement, Kawasaki was a prevailing party and was entitled to costs and attorney fees. However, in 2001, following a hearing on the amount of arbitration costs and attorney fees to be assessed against Schultz (some $1.7 million according to Kawasaki), the arbitrator issued a "Final Award" in which he found that the franchise agreement was a contract of adhesion and "that the arbitration agreements were unconscionable at the time they were made and [the

arbitrator] refuses to enforce the provision in ¶32 which gives the prevailing party the right to recover all costs and expenses of the arbitration, including without limitation, attorneys' fees." Final Award of Arbitrator at 8 (January 31, 2001).

Neither party was satisfied with the outcome of the arbitration proceedings and both parties returned to the District Court where Kawasaki filed a Motion to Confirm the Arbitration Award as to Liability and Vacate and/or Modify the Arbitration Award as it Pertains to Attorney's Fees. For its part, Schultz Motors sought to vacate the entire award. In its March 2002 ruling, the District Court confirmed the arbitrator's award in its entirety and concluded that the arbitrator was correct when it determined that the District Court's 1994 ruling, which held that ¶32 was a valid arbitration provision under 9 U.S.C. § 4, had not addressed the validity of the last sentence of ¶32. We agree.

## II.

We are to apply "ordinary, not special, standards when reviewing district court decisions upholding arbitration awards." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 948 (1995). Thus, we review a district court's findings of fact for clear error and conclusions of law de novo. Id. at 947–48.

The purpose of the Federal Arbitration Act was to establish "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). A court asked to confirm, modify, or vacate an arbitrator's award owes the arbitrator's decision great deference. See, e.g., Osceola County Rural Water Sys. v. Subsurfco, Inc., 914 F.2d 1072, 1075 (8th Cir. 1990). Thus, the Federal Arbitration Act provides that a district court can vacate an arbitration award only in limited circumstances:

(1) Where the award was procured by corruption, fraud, or undue means.

-4-

(2) Where there was evident partiality or corruption in the arbitrators, or either of them.

(3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).[2]  In addition to § 10's grounds for vacating an arbitrator's award, § 11 provides for three grounds upon which a reviewing court may modify the arbitrator's award:

(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

---

[2]In addition, the Supreme Court has recognized a narrow public policy exception that permits the reviewing court to decline to enforce an arbitration award that contravenes "explicit public policy." W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers, 461 U.S. 757, 766 (1983).  The "public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" Id. (quoting Muschany v. United States, 324 U.S. 49, 66 (1945)).  Thus, in Iowa Electric Light & Power Co. v. Local Union 204, 834 F.2d 1424 (8th Cir. 1987), we declined to enforce an arbitration award that would have reinstated a union member in his job at a nuclear power plant after he was dismissed for violating safety regulations designed to contain radiation in the event of a disaster.  In that case, we had little trouble concluding that the federal regulations requiring the safety measures that the employee had violated amounted to a "strong public policy" that required us to refuse to enforce the arbitration award.  Id. at 1427–28.

(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

9 U.S.C. § 11. In sum, Congressionally-mandated deference to arbitration proceedings means that a "district court must take the award as it finds it and either vacate the entire award using section 10 or modify the award using section 11." Legion Ins. Co. v. VCW, Inc., 198 F.3d 718, 721 (8th Cir. 1999). Still, the deference owed to arbitrators "is not the equivalent of a grant of limitless power." Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674, 916 F.2d 63, 65 (2d Cir. 1990). And "the courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators." Matteson v. Ryder Sys. Inc., 99 F.3d 108, 113 (3d Cir. 1996). With this in mind, we turn to the merits of Kawasaki's appeal.

Faced with these statutory limitations on a court's ability to review arbitration awards, Kawasaki urges that the District Court erred in one of two ways. First, it claims that the arbitrator's decision should be modified under § 11(b) because the District Court addressed the validity of ¶32 (the arbitration provision) in its 1994 Order. Therefore, Kawasaki argues, the arbitrator "awarded upon a matter not submitted to [it]" when it determined that the fee provision was unconscionable. Second, Kawasaki argues that, in the event that § 11(b) is inapplicable, the arbitrator essentially issued two separate rulings. Thus, as the logic goes, the arbitrator's second, independent, award on fees should be vacated under § 10(a)(4) because the District Court addressed the validity of ¶32 (the arbitration provision) in its March 1994 Order. Hence, Kawasaki urges that the arbitrator "exceeded [its] powers" when it ruled that the fee provision was unconscionable. We disagree and conclude that the District Court did not err when it affirmed the arbitrator's ruling in its entirety.

Whether or not the arbitrator issued one ruling or two, we would not set aside the District Court's decision as erroneous. Rather, the Federal Arbitration Act and existing case law require that we reach the opposite conclusion.

The Supreme Court has repeatedly noted that the Federal Arbitration Act was designed to combat longstanding hostility to arbitration by establishing "a liberal federal policy favoring arbitration agreements." Moses H. Cone Mem. Hosp., 460 U.S. at 24; see also Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220 n.6 (1985). The Act instructs district courts to enforce the parties' decision to remove their controversy from the judicial realm and have it decided by arbitration. Byrd, 470 U.S. at 218. Thus, the Act requires that when a party petitions for an order to compel arbitration, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Although § 4 imbues the federal courts with only limited powers in the context of a party's motion to compel arbitration, it is clear that the validity of the arbitration clause and its applicability to the dispute at hand are questions for the district court to decide. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403–04 (1967); Houlihan v. Offerman & Co., 31 F.3d 692, 694–95 (8th Cir. 1994) ("under the Federal Arbitration Act, the district court must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement"). However, this determination as to whether the parties agreed to arbitrate their dispute is also the end of a district court's powers. See Prima Paint, 388 U.S. at 403–04. If the parties have agreed to arbitrate their dispute, other claims are for the arbitrator to decide. See id. at 404. Prima Paint makes it clear that under the Federal Arbitration Act, the parties are limited to presenting claims to the court that the arbitration agreement is invalid or does not apply by its terms to the present dispute. If the parties have agreed to arbitration, the Act requires that a

district court order them to proceed to that forum, where they must address all other claims to the arbitrator.

We applied the foregoing principles in Larry's United Super, Inc. v. Werries, 253 F.3d 1083 (8th Cir. 2001). The issue in Werries was whether the public policy underlying the availability of punitive damages under the Racketeer Influenced and Corrupt Organizations Act might prevent a district court from ordering arbitration of a dispute where the parties' arbitration agreement waived punitive damages and other relief. Id. at 1084–85. We held that the district court's duty was limited to determining whether the parties had agreed to arbitrate and whether that agreement was valid. Thus, the party seeking to void the provisions waiving punitive damages and other relief had to address those arguments to the arbitrator. Id. at 1085–86. We think the same logic applies in this case and note that at least two other courts of appeal have held that it is for the arbitrator to consider challenges to attorney-fee provisions or other limits on remedies in arbitration provisions. See Thompson v. Irwin Home Equity Corp., 300 F.3d 88, 92 (1st Cir. 2002) ("Arbitration is the correct initial forum for the Thompsons to air their objection to the attorney's fees provision in the arbitration agreement."); Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 230–31 (3d Cir.), cert. denied, 522 U.S. 915 (1997); cf. Metro E. Ctr. v. Qwest Communications, Inc., 294 F.3d 924, 929 (7th Cir.) ("If the provision in the tariff calling for use of the American Rule is unlawful under the Communications Act, then the right forum for complaint is the Federal Communications Commission—though it is conceivable that the arbitrator may play a role too."), cert. denied, 123 S. Ct. 707 (2002).

Schultz's claim that the last sentence of ¶32, which provides that "[t]he prevailing party shall be entitled to recover from the nonprevailing party all costs and expenses of the arbitration, including without limitation, attorneys' fees," is unconscionable is based upon the public policy underlying California's unconscionability jurisprudence and is of the same ilk as the claim we considered in

Werries.[3]  Therefore, the claim was properly presented to the arbitrator and not the District Court.  It follows that the District Court properly concluded that its March 1994 Order compelling arbitration dealt only with "the issue of arbitrability, i.e., whether the arbitration provision between the parties should be enforced to require their dispute to be arbitrated.  Memorandum and Order at 10 (March 26, 2002).  The Court did not address the attorney fee provision, which was not mentioned in any of the parties' pleadings at the time."  Id.  Indeed, had the District Court concluded otherwise, its ruling would have addressed matters other than whether the parties agreed to arbitrate their dispute (and whether that agreement was valid).  As such, the decision would have thwarted Congress's intent to allow parties that contract to have their conflicts settled outside the judicial realm to have these contracts enforced and would be inconsistent with the Supreme Court's decision in Prima Paint and our decision in Werries.

Our decision in Gannon v. Circuit City Stores, Inc., 262 F.3d 677 (8th Cir. 2001), also lends support to our conclusion.  In that case, Circuit City appealed a decision by the district court that denied its motion to compel arbitration because a provision in the parties' arbitration agreement violated Missouri public policy by limiting the amount of punitive damages available under Missouri's Human Rights Act.  The sole issue on appeal was whether the district court erred by not severing the

_____

[3]We have no occasion to review the merits of the arbitrator's ruling on the validity of this provision.  See United Paperworkers Int'l. Union v. Misco, Inc., 484 U.S. 29, 38 (1987) (observing that courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. . . . as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision"); but see First Options, 514 U.S. at 942 (noting that "parties [are] bound by arbitrator's decision not in 'manifest disregard' of the law") (quoting Wilko v. Swan, 346 U.S. 427, 436–37 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989)).

invalid provision (based on the severability clause in the contract and Missouri common law) and ordering the parties to proceed to arbitration on the remaining valid provisions.  Id. at 680.  Crucial to understanding the outcome in Gannon is the fact that the parties did not challenge the district court's determination that the provision was invalid.  Id. at 680–81.  Further, we acknowledged in Gannon that the fact that the district court resolved this issue at all was in tension with our earlier decision in Werries, which we noted stood for the proposition that such matters were "for arbitrators, not the courts, to decide in the first instance."  Id. at 681 n.6.  Thus, the rule in the Eighth Circuit, as established by Werries and recognized in Gannon, is that in the context of a motion to compel arbitration under the Federal Arbitration Act, the district court is limited to considering the parties' claims that the arbitration agreement is invalid or that it does not apply to the dispute with respect to which arbitration is sought.  Thereafter, once the parties have proceeded to arbitration, they must address their claims to the arbitrator.

IV.

For the reasons stated above, we affirm the decision of the District Court confirming the arbitrator's award in its entirety.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-10-